# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DOROTHY W.,[1]                              )
                                            )
    *Plaintiff*,                        )
                                            )
      v.                           )          Civil No. 3:24-cv-552 (DJN)
                                            )
FRANK BISIGNANO,                            )
Commissioner of Social Security,[2]         )
                                            )
    *Defendant*.                        )
_____ )

## REPORT AND RECOMMENDATION

In this action, Plaintiff Dorothy W. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 8, 14, 22.) The motions have been fully briefed (ECF Nos. 14, 18, 22), making this matter ripe for review.

Plaintiff moves the Court to reverse the Commissioner's decision denying her social security benefits and either award her benefits or remand this matter for a *de novo* hearing and new decision. (ECF No. 18, at 28.[3]) As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ") failed to account for Plaintiff's mild mental limitations in the residual

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Acting Commissioner as Defendant in this action. 42 U.S.C. § 405(g). No further action need be taken. 42 U.S.C. § 405(g).

[3] The Court uses the pagination generated by CM/ECF rather than the pagination in the underlying documents.

functional capacity ("RFC") assessment, overstated Plaintiff's activities of daily living in fashioning the mental RFC determination, and improperly evaluated medical opinions relating to Plaintiff's mental impairments.[4]   (ECF No. 18, at 12-23.)   Regarding her physical impairments, Plaintiff contends that the ALJ's failure to explain why she did not include a kneeling limitation in the RFC assessment warrants reversal.   (ECF No. 18, at 24-27.)   In response, the Commissioner asks that the decision denying benefits be affirmed, contending that substantial evidence supports the ALJ's evaluation of Plaintiff's non-severe mental impairments, the ALJ properly explained the bases for assigning (or not assigning) RFC limitations, and any error in failing to include a kneeling limitation would be harmless.   (ECF No. 22, at 15-27.)

For the reasons set forth below, the Court finds that the ALJ applied correct legal standards in considering Plaintiff's mental limitations and substantial evidence supports the ALJ's conclusion.   The Court also agrees with the Commissioner that any error in failing to include a kneeling limitation in the RFC assessment (or explain its omission from the RFC determination) would be harmless.   Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 22) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on September 21, 2021, alleging disability beginning on September 1, 2020.   (Administrative Record ("R.") at 93-94.)[5]   In

---

[4] Plaintiff's briefing breaks this argument out into two assignments of error, with one containing subparts.   Because both assignments of error challenge the ALJ's evaluation of Plaintiff's mental work-related abilities, the Court addresses them together.

[5] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Report and Recommendation.   The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

her application, Plaintiff alleged that she suffered from severe depression, sarcoidosis, arthritis, sleep apnea, migraines, high blood pressure, high cholesterol, right carpal tunnel syndrome, a gastrointestinal tear, and severe trigger finger in her left middle finger. (R. at 94.) The SSA denied Plaintiff's claim initially and again upon reconsideration. (R. at 115-16, 127-28.) Plaintiff requested a hearing before an ALJ, which was held on December 13, 2023. (R. at 62-92, 133-34.)

On January 9, 2024, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act"). (R. at 44-56.) On April 24, 2024, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 15-18.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments

3

meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v.*

4

*Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight."  *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process.  (R. at 44-56); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2020 (the alleged onset date).  (R. at 46.)

At step two, the ALJ found Plaintiff suffered from severe impairments of skeletal spine disorders, osteoarthritis, inflammatory arthritis, and obesity.  (R. at 46.)  While the ALJ acknowledged that Plaintiff was diagnosed with depressive and generalized anxiety disorders in July 2020, she concluded that Plaintiff did not suffer from any *severe* mental impairments because

those disorders were treated with medication, examinations showed generally normal mental status findings, and Plaintiff was able to perform a variety of tasks requiring basic mental functioning. (R. at 47.)  Specifically, the ALJ concluded that Plaintiff's "medically determinable mental impairments, considered singly and in combination, d[id] not cause more than minimal limitation in [her] ability to perform basic mental work activities and [were] therefore non[-]severe."  (R. at 47.)  In making that finding, the ALJ considered the four broad areas of mental functioning (commonly called "paragraph B" criteria) and concluded that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas."[6]  (R. at 47-48.)

In the first functional area of "understanding, remembering, or applying information," the ALJ found Plaintiff had no limitations.  (R. at 47.)  The ALJ explained that Plaintiff did not routinely identify any memory problems.  (R. at 47.)  Instead, Plaintiff was able to provide information about her medical and work history, drive, manage her medical care and finances, shop, and care for her animals, all of which demonstrate that she was "capable of understanding, remembering, and applying information in a wide variety of situations."  (R. at 47.)  Moreover, examination findings did not reveal any abnormalities in her memory or cognitive function.  (R. at 47.)

---

[6] The SSA evaluates the effects of a mental disorder on four areas of mental functioning based on a five-part rating scale.  20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2).  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis in an area.  C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(e).  A marked limitation exists when an impairment seriously limits the ability to do the same.  20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(d).  Moderate indicates a fair limitation, mild includes a slight limitation, and "no" or "none" means the claimant can function in the area independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(a)-(c).

In the second functional area of "interacting with others," the ALJ found Plaintiff had no limitations.  (R. at 47.)  The ALJ stated that neither Plaintiff nor her treatment providers have indicated that she has any substantial problems getting along with others.  (R. at 47.)  The ALJ further explained that Plaintiff's activities of daily living, such as shopping and attending church virtually, require her to "demonstrate appropriate social skills."  (R. at 47.)

Next, in the third functional area, the ALJ found Plaintiff mildly limited in "concentrating, persisting, or maintaining pace."  (R. at 48.)  As the ALJ acknowledged, Plaintiff reported "some difficulty sustaining attention and concentration for prolonged periods."  (R. at 48.)  But the ALJ emphasized that treatment providers did not identify any deficits in Plaintiff's ability to concentrate, persist, or maintain pace.  (R. at 48.)  Indeed, the ALJ noted that Plaintiff managed her medical care and finances, cared for her animals, shopped, prepared simple meals, read, watched television, and drove.  The ALJ concluded that Plaintiff's activities of daily living "require her to maintain some degree of concentration, persist at tasks, and complete those tasks in a timely fashion."  (R. at 48.)

Similarly, in the final functional area of "adapting or managing oneself," the ALJ found Plaintiff had mild limitations.  (R. at 48.)  While Plaintiff reported "some trouble caring for her personal needs" due to her physical impairments, the ALJ explained that Plaintiff had not received psychiatric inpatient or intensive outpatient treatment or shown any difficulties in her ability to tolerate change or manage her psychological symptoms.  (R. at 48.)  The ALJ further found that treatment providers did not note any abnormalities in Plaintiff's grooming or hygiene and examination findings generally showed normal insight, judgment, and behavior. (R. at 48.) Based on these findings, the ALJ determined that Plaintiff was "capable of regulating her emotions, controlling her behavior, and maintaining her own well-being."  (R. at 48.)

The ALJ concluded: "Because [Plaintiff's] medically determinable mental impairments cause[d] no more than 'mild' limitation in any of the functional areas *and* the evidence [did] not otherwise indicate that there [was] more than a minimal limitation in [Plaintiff's] ability to do basic work activities, it [was] non-severe."  (R. at 48 (emphasis in original) (citing 20 C.F.R. § 404.1520a(d)(1)).)  The ALJ explained that the RFC assessment did not reflect any mental limitations because Plaintiff's "mild 'paragraph B' limitations [were] so slight that they [did] not cause any measurable loss of function in [her] mental abilities to understand, remember or carry out instructions, to make work related decisions, or to respond appropriately to supervisors, coworkers, usual work situations, changes in work setting, or work pressures . . . ."  (R. at 48.)

At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 48.)

The ALJ then determined Plaintiff's RFC.  (R. at 49-54.)  Based on the record, the ALJ found that Plaintiff retained the ability to perform light work as defined by 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can stand and/or walk for a total of four hours in an eight-hour workday. She can frequently reach overhead with the left, non-dominant upper extremity. She can frequently finger with the bilateral upper extremities.  She can frequently balance.  She can occasionally stoop, crouch, and climb ramps and stairs.  She can never crawl or climb ladders, ropes, or scaffolds.  She can tolerate frequent exposure to humidity, wetness, pulmonary irritants, extreme cold, and extreme heat.

(R. at 49.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints, which largely focused on the impacts of her physical, not mental, impairments.  (R. at 50; *see also* R. at

77-78, 83-85.)[7]  The ALJ also considered Plaintiff's activities of daily living.  (R. at 50.)  The ALJ then detailed Plaintiff's medical records pertaining to her impairments.  (R. at 51-53.)

Regarding the medical evidence that supports Plaintiff's knee impairments, the ALJ acknowledged Plaintiff's history of bilateral knee pain beginning in 2019.  (R. at 51-52.)  In May 2019, Plaintiff underwent a right total knee replacement.  (R. at 51.)  That same year, in October 2019, X-rays showed a well-aligned knee replacement with no hardware failure in the right knee and severe degenerative changes of the medial compartment in the left knee.  (R. at 51.)  On exam, Plaintiff had tenderness in her left knee and mild effusion in her right knee but otherwise had "full and painless range of motion."  (R. at 51.)

In October 2021, imaging showed a total right knee replacement with no loosening of the hardware.  (R. at 51.)  In November 2021, X-rays of the left knee showed moderate medial osteoarthritis and mild lateral degenerative joint disease.  (R. at 51.)  In December 2021, Plaintiff presented to an orthopedic specialist, in part, for bilateral knee pain.  On exam, Plaintiff had a mild effusion in the right lower extremity but was otherwise "grossly stable" and had normal motor strength.  (R. at 51.)

In February 2022, a rheumatology specialist noted Plaintiff had knee and hip tenderness and "some decreased knee range of motion" but otherwise she had normal motor strength, intact sensation and coordination, and a normal gait.  (R. at 51.)  Based on these findings, Plaintiff received an injection and was prescribed Plaquenil, Prednisone, and Gabapentin.  (R. at 51.)  In April 2022, an examination showed Plaintiff was stable and could stop taking Prednisone.  (R. at 51.)  In July 2022, Plaintiff reported using the elliptical, swimming, or going to the gym three

---

[7] Because Plaintiff's assignments of error focus on the absence of any mental or kneeling limitations in the RFC assessment, the Court limits its discussion of Plaintiff's physical impairments only to the extent necessary to evaluate Plaintiff's arguments.

times a week despite displaying diminished knee flexion. (R. at 51.) That same month, Plaintiff was noted to have no knee tenderness. (R. at 51.) In November 2022, Plaintiff was "actively limping" at an examination. (R. at 51.) As a result, Plaintiff received a Toradol injection which improved her pain. (R. at 51.)

In February 2023, Plaintiff presented with swelling in the right knee. (R. at 52.) A few months later, in May 2023, Plaintiff displayed normal strength and sensation at a rheumatology appointment. (R. at 52.) In addition, her physical therapy notes showed she continued to receive physical therapy with some improvement. (R. at 52.)

The ALJ found that these examination notes showed Plaintiff's osteoarthritis and inflammatory arthritis "limit[ed] her to work at the light exertional level," "reduce[d] her capacity to stand and walk," and "affect[ed] her abilit[y] to perform postural tasks and interact with certain environmental conditions." (R. at 52.) However, after considering the record evidence as a whole, the ALJ concluded that while Plaintiff's "impairments affect[ed] her ability to perform exertional, postural, manipulative, and environmental activities," the "evidence [did] not demonstrate [her] symptoms [were] as limit[ing] as she allege[d]." (R. at 52-53.) In making this finding, the ALJ noted Plaintiff's ability to perform some routine daily tasks, improvement with conservative treatment, and examination notes generally showing normal strength and sensation. (R. at 52-53.)

The ALJ then considered the medical opinions and prior administrative medical findings. (R. at 53-54.) As relevant to Plaintiff's assignments of error, the ALJ considered the medical opinions of two state agency examiners, Jack Hutcheson, Jr., M.D., and Bert Spetzler, M.D. (R. at 53-54.) In December 2021, Dr. Hutcheson opined that Plaintiff could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; never crawl; and occasionally balance, stoop, kneel, and crouch. (R. at 53.) Dr. Spetzler "offered a similar determination." (R. at 53.)

Based on a review of these opinions and the record, the ALJ found Dr. Spetzler's opinion persuasive but did not assign a weight to Dr. Hutcheson's opinion.  (R. at 54.)  The ALJ did, however, find Dr. Hutcheson's opinion "consistent with [the] evidence." (R. at 53.)

In assessing their opinions, the ALJ acknowledged that Plaintiff's pain affected her ability to perform postural tasks.  (R. at 53.)  The ALJ also cited examination notes showing Plaintiff displayed knee tenderness at times but otherwise retained full range of motion and normal sensation and reflexes.  (R. at 53.)  The ALJ further considered Plaintiff's ability to perform certain daily activities, such as caring for her dogs, bathing, shopping, and driving.  (R. at 53.)  The ALJ emphasized that Plaintiff's daily activities required her to attain a variety of postural positions, which suggests that she could occasionally stoop, crouch, and climb stairs as opined by both state agency physicians.  (R. at 53.)  But the ALJ concluded that Plaintiff "should not be required to climb ladders or crawl" based on her pain and weight.  (R. at 53.)

The ALJ then considered the medical opinion of Augustina Nyeche, NP ("NP Nyeche"), who examined Plaintiff and prepared a consultative report in December 2021.  (R. at 54.)  NP Nyeche found, in part, that Plaintiff could *never* kneel.  (R. at 54.)  Although the ALJ acknowledged that NP Nyeche's opinion was "overall consistent with the evidence" and her examination findings, the ALJ found NP Nyeche's opinion not fully persuasive regarding handling and feeling limitations.  (R. at 54.)

After completing the RFC assessment, the ALJ found at step four that Plaintiff could perform her past relevant work as a senior treasury analyst, which is generally performed and was actually performed at a sedentary exertional level.  (R. at 54-55.)  The ALJ alternatively found at step five that additional jobs existed in significant numbers in the national economy that Plaintiff could perform considering her age, education, work experience, and RFC.  (R. at 55.)  Therefore,

the ALJ found Plaintiff not disabled from September 1, 2020 (the alleged onset date) through January 9, 2024 (the date of the decision). (R. at 56.)

## IV. ANALYSIS

Plaintiff raises two challenges to the ALJ's decision. First, Plaintiff argues that the ALJ failed to properly consider Plaintiff's mental limitations in the RFC. (ECF No. 18, at 12-23.) Second, Plaintiff alleges that the ALJ failed to explain the omission of any kneeling limitation from the RFC assessment, even though two state agency examiners and one consultative examiner imposed kneeling restrictions. (ECF No. 18, at 24-27.) The Court addresses each argument below and finds no reversible error.

### A. The ALJ Properly Considered Plaintiff's Mental Limitations in Determining the RFC

Plaintiff contends that the RFC determination fails to properly account for her mental limitations. (ECF No. 18, at 12-23.) This argument has three subparts. First, Plaintiff asserts that the ALJ failed to explain why the RFC contained no limitations relating to her mental impairments even though the ALJ found Plaintiff mildly limited in her ability to concentrate, persist, or maintain pace and adapt or manage herself. (ECF No. 18, at 14-16.) Second, Plaintiff argues that the ALJ failed to consider the medical opinion of state agency psychological consultant, Dr. McClain. (ECF No. 18, at 20-21.) Third, Plaintiff contends there is no connection between the evidence the ALJ considered regarding Plaintiff's activities of daily living and how those activities transfer to skilled work-related activities. (ECF No. 18, at 21-23.) As discussed below, the Court finds that the ALJ reasonably accounted for Plaintiff's mental limitations in the RFC and sufficiently explained how she made those determinations. In addition, the Court finds any error in failing to address Dr. McClain's medical opinion harmless.

*1.   The ALJ did not err in excluding Plaintiff's mild mental limitations from the RFC.*

The ALJ reasonably found that Plaintiff's non-severe mental impairments did not result in functional limitations and sufficiently explained the basis for this conclusion.  The ALJ considered Plaintiff's mental limitations at step two.  She found that Plaintiff's "medically determinable mental impairments [of depressive disorder and generalized anxiety disorder], considered singly and in combination, d[id] not cause more than minimal limitation in [her] ability to perform basic mental work activities and [were] therefore non[-]severe."  (R. at 47.)

In considering the four areas of mental functioning, the ALJ determined that Plaintiff had *no* limitations in understanding, remembering, or applying information and in interacting with others and only *mild* limitations in concentrating, persisting, or maintaining pace and in adapting or managing herself.  (R. at 47-48.)  In other words, the ALJ found no more than slight limitations in Plaintiff's ability to function "independently, appropriately, effectively, and on a sustained basis" in all four areas used to evaluate mental impairments.  20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(a)-(e).

In reaching these conclusions, the ALJ acknowledged that Plaintiff was diagnosed with both depressive and generalized anxiety disorders in July 2020 but also noted that those conditions were treated with medication and that mental examination findings were generally normal.  (R. at 47.)  The ALJ further emphasized Plaintiff's activities of daily living, including her ability to manage finances, shop for groceries, drive, and prepare simple meals—activities which require at least basic mental functioning.  (R. at 47.)

Although Plaintiff reported some difficulty caring for her personal needs as well as sustaining attention and concentration, the ALJ noted that treatment providers had not identified any deficiencies in her grooming or hygiene or in her ability to concentrate, persist, or maintain

pace. (R. at 48.) In addition, examination findings generally showed normal insight, judgment, and behavior and were devoid of any evidence suggesting that Plaintiff had difficulties tolerating changes or managing her psychological symptoms. (R. at 48.) Thus, contrary to Plaintiff's allegations, the ALJ found Plaintiff "capable of regulating her emotions, controlling her behavior, and maintaining her own well-being" based on the objective medical evidence.[8] (R. at 48.) The ALJ further emphasized Plaintiff's activities of daily living, including managing her medical care and finances, caring for her animals, shopping, preparing simple meals, reading, watching television, and driving, which again require at least some degree of concentration and ability to persist at and complete tasks in a timely fashion. (R. at 48.)

These findings support the ALJ's conclusion that Plaintiff's mental impairments had no more than "a minimal limitation in [Plaintiff]'s ability to do basic work activities" and the absence of mental limitations in Plaintiff's RFC, which as the ALJ noted "reflects the degree of limitation . . . found in the 'paragraph B' mental function analysis." (R. at 48.) The ALJ further emphasized that Plaintiff's "mild 'paragraph B' limitations [were] *so slight* that they do not cause any

---

[8] Plaintiff argues that objective medical evidence conflicts with the ALJ's finding of a mild limitation only in her ability to adapt and manage oneself. (ECF No. 18, at 17.) Specifically, she cites to record evidence showing her admission to a psychiatric unit in 2010 and prior suicide attempts in 2013. (ECF No. 18, at 17; *see also* R. at 273, 511.) Plaintiff also contends that Dr. Spetzler's and NP Nyeche's opinions support additional mental limitations. (ECF No. 18, at 17.) These arguments do not persuade for many reasons. As an initial matter, the record evidence cited by Plaintiff predates the alleged onset date by seven to ten years. *See Chandra T.G. v. O'Malley*, No. 2:23-cv-495, 2025 WL 756541, at *3 (E.D. Va. Mar. 10, 2025) ("Evidence that predates the alleged disability onset date is of limited relevance."). Second, contrary to Plaintiff's assertion, NP Nyeche's and Dr. Spetzler's opinions focused on Plaintiff's physical impairments and limitations, not her mental limitations. (R. at 53-54, 109-11, 515-16.) Neither consultant found Plaintiff limited in any of the four areas of mental functioning. Third, even if Plaintiff can point to evidence that would support additional limitations, the ALJ identified other substantial record evidence supporting her RFC determination. It is not this Court's role to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653).

measurable loss of function in the mental abilities to understand, remember or carry out instructions, to make work related decisions, or to respond appropriately to supervisors, coworkers, usual work situations, changes in work setting, or work pressures."  (R. at 48 (emphasis added).)  In other words, the ALJ concluded that Plaintiff's mental health impairments were so slight that they did not warrant inclusion in the RFC assessment.[9]  (R. at 48 ("Thus, the following residual functional capacity assessment does not reflect any limitation in mental abilities.").)

While Plaintiff challenges the ALJ's failure to explain the omission of any limitations relating to her mild mental impairments in the RFC assessment (ECF No. 18, at 14-18), "ALJs are not required to explain or incorporate functional limitations with de minimis effect in RFCs." *Kimberly G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-45, 2021 WL 8086729, at *10 (E.D. Va. Dec. 7, 2021), *report and recommendation adopted*, 2022 WL 882165 (E.D. Va. Mar. 24, 2022); *see also Lori A. J. v. Kijakazi*, No. 2:22-cv-131, 2023 WL 3069394, at *6 (E.D. Va. Apr. 5, 2023) ("[A]n ALJ is not required to discuss non-severe impairments in the RFC analysis so long as the ALJ considered them in the decision."), *report and recommendation adopted*, 2023 WL 3060789 (E.D. Va. Apr. 24, 2023); *Victoria B. v. Kijakazi*, No. 3:22-cv-157, 2023 WL 2579461, at *8 (E.D. Va. Mar. 20, 2023) (concluding "that the ALJ was not required to incorporate Plaintiff's mild limitations in the [RFC]"); *Younger v. Berryhill*, No. 2:18-cv-182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019) (finding remand was not required "when the ALJ failed to give an explanation in the presence of mild limitations only"), *report and recommendation adopted*, 2019 WL 3451305 (E.D. Va. July 29, 2019).  In finding Plaintiff's mental impairments non-severe, her "limitations

---

[9] Plaintiff argues that "there is no detailed reasoning between the descriptions of the mild mental limitations . . . and the 'so slight' conclusion." (ECF No. 18, at 16.)  However, as noted above, the ALJ adequately addressed the mental health evidence in the record in concluding that Plaintiff's mental health impairments were so slight that the RFC did not reflect any mental limitations.  This provides a sufficient explanation to allow for a meaningful judicial review.

by their nature have 'no more than a minimal effect' on her working ability." *Kimberly G.*, 2021 WL 8086729, at *10 (quoting SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).

In any event, the ALJ supported her findings at step two that Plaintiff's mental impairments caused no more than a minimal impact on Plaintiff's ability to perform work activities. Reading the decision as a whole, the ALJ's explanations allow for meaningful review, and substantial evidence supports the ALJ's findings that Plaintiff's non-severe mental impairments did not justify mental RFC limitations. *See Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (finding the challenged impairments were addressed under step two which "tells [the court] what impact th[o]se limitations had in the [RFC] analysis" and allows for "a meaningful review without making an [ALJ] repeat himself"); *Caryn D.M. v. Kijakazi*, No. 4:21-cv-40, 2022 WL 4544737, at *7 (E.D. Va. June 8, 2022) ("The ALJ's explanation of Plaintiff's nonsevere mental impairments sufficiently 'buil[t] an accurate and logical bridge from the evidence to his conclusion' that Plaintiff's RFC did not require any mental limitations." (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016))), *report and recommendation adopted*, 2022 WL 4541636 (E.D. Va. Sept. 28, 2022); *Todd A. v. Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *8 (E.D. Va. Nov. 16, 2021) (finding that the ALJ's opinion must be read as a whole); *see also William W. v. Kijakazi*, No. 1:22-cv-473, 2023 WL 5436005, at *17 (M.D.N.C. Aug. 23, 2023) ("The ALJ did not expressly assess [p]laintiff's mental work-related abilities on a function-by-function basis . . . [but] no basis for remand exists because . . . the ALJ's decision nevertheless supplies the necessary 'accurate and logical bridge.'"). Therefore, the Court finds no error.[10]

---

[10] In addition, Plaintiff argues that the ALJ erred in omitting her mild mental limitations in the hypotheticals posed to the vocational expert at the administrative hearing. (ECF No. 18, at 15.) Because the Court finds no error in the ALJ's decision not to include Plaintiff's mild mental limitations in the RFC, there is similarly no error in the ALJ's failure to include those mental limitations in the questions posed to the vocational expert. *See Dardozzi v. Colvin*, No. 1:16-cv-

2. *The ALJ's failure to discuss Dr. McClain's medical opinion constitutes harmless error.*

Plaintiff also asserts that the ALJ erred by failing to consider Dr. McClain's assessment of her mental impairments. (ECF No. 18, at 20-21.) The Commissioner concedes that "the ALJ did not explicitly discuss Dr. McClain's findings" but contends that "any error in failing to address the opinion is immaterial." (ECF No. 22, at 19.) Because the ALJ's RFC assessment is consistent with Dr. McClain's opinion, the Court agrees with the Commissioner that any error in the ALJ's failure to explain how she considered that opinion is harmless.

Plaintiff, as "the claimant seeking reversal of an adverse decision," bears the burden of "prov[ing] that an error materially affected the outcome of the case . . . ." *Bennett v. Colvin*, No. 2:13-cv-189, 2014 WL 1603737, at *8 (E.D. Va. Apr. 21, 2014). If she cannot meet that burden, "the prior decision should be affirmed." *Id.* "The relevant question under this harmless error inquiry is whether the ALJ's failure to weigh or consider the consultant['s] opinion[] materially affected the disability determination." *Id.* at *9.

Here, Dr. McClain provided a Psychiatric Review Technique assessment dated August 30, 2022. (R. at 107-08.) As to the "paragraph B" criteria, Dr. McClain found Plaintiff had no limitations in understanding, remembering, or applying information and in interacting with others, and only mild, or slight, limitations in concentrating, persisting, or maintaining pace and in adapting or managing oneself. (R. at 108.) Dr. McClain acknowledged Plaintiff's previous anxiety and depression diagnoses, but noted Plaintiff had no suicidal ideations or hospitalizations

---

20, 2016 WL 6085883, at *3 (D. Md. Oct. 18, 2016) (finding the ALJ's omission of mental limitations from the hypotheticals posed to the vocational expert was not improper where the ALJ properly found no mental limitations stemming from plaintiff's depressive disorder); *Hiser v. Astrue*, No. 5:08-cv-941, 2009 WL 3064374, at *18 (S.D.W. Va. Sept. 21, 2009) (finding no error in the ALJ's failure to include any mental limitations in the questions posted to the vocational expert where "the medical evidence failed to establish any significant functional limitations resulting from [plaintiff's] mental impairments").

during the relevant period, treated with medication, and could engage in many activities of daily living which required an ability to "sustain attention and follow instructions."  (R. at 108.)

The ALJ's consideration of the "paragraph B" criteria, determination that Plaintiff's mental impairments were non-severe, and RFC assessment tracks Dr. McClain's opinion and is consistent with her findings.  (R. at 47-48, 107-08.)  Because consideration of Dr. McClain's opinion would not have altered the ALJ's RFC assessment (and instead provides further support for the ALJ's RFC assessment), Plaintiff has not met her burden of showing that any error in failing to consider Dr. McClain's opinion materially affected the outcome of her case.  *See*, *e.g.*, *Tanner v. Comm'r Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015) (unpublished) (finding reversal for failure to assign weight to a medical opinion pointless because "the RFC assessment and [the doctor's] opinion are largely consistent, and it is highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability"); *Bennett*, 2014 WL 1603737, at *10 ("The ALJ's failure to consider these opinions reveals itself to be even more harmless when considering that the consultants['] RFC determinations were largely in line with the ALJ's RFC determination . . . ."); *Love-Moore v. Colvin*, No. 7:12-cv-104, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (finding failure to consider a medical opinion harmless error where that opinion was "consistent with the ALJ's determination that [the claimant's] depression is not severe and with the ALJ's residual functional capacity determination" and therefore consideration of that opinion "would not have altered the ALJ's conclusion that [the claimant] is not disabled"), *aff'd sub nom.*, 584 F. App'x 155 (4th Cir. 2014).  Therefore, any error is harmless and does not warrant reversal.

3. *The ALJ properly considered the extent to which Plaintiff performed activities of daily living to further support the findings of no more than mild mental limitations.*

Plaintiff next argues that the ALJ failed to explain how Plaintiff's ability to perform certain activities of daily living translated to an ability to engage in skilled work-related activities. (ECF No. 18, at 21-23.) The Court finds no error in the ALJ's consideration of Plaintiff's activities of daily living.

The ALJ considered Plaintiff's daily activities as one factor in analyzing functional limitations stemming from her mental impairments and found that her activities supported the finding of no more than mild limitations in Plaintiff's ability to concentrate, persist, and maintain pace and adapt and manage herself. (R. at 48.) Regarding Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ noted that Plaintiff could perform certain daily activities such as managing her medical care and finances, caring for her animals, shopping, preparing simple meals, reading, watching television, and driving. (R. at 48.) The ALJ concluded that those activities "require[d] [Plaintiff] to maintain some degree of concentration, persist at tasks, and complete those tasks in a timely fashion." (R. at 48.) Regarding Plaintiff's ability to adapt and manage herself, the ALJ acknowledged that Plaintiff had "some trouble caring her for personal needs" but emphasized that Plaintiff attributed those issues to her physical impairments, rather than mental conditions. (R. at 48.)

The ALJ also considered Plaintiff's treatment records in evaluating the effects of her mental disorders. The ALJ noted that: (1) Plaintiff received treatment for her conditions from her primary care provider in the form of prescribed medication and did not required psychiatric inpatient or intensive outpatient treatment: (2) mental status portions of examinations were generally normal, including normal insight, judgment, and behavior; and (3) providers did not "describe any abnormalities in her memory or cognitive functioning during appointments", "any

19

problems interacting with her", "any deficits in the[] areas" of concentrating, persisting, or maintaining pace, or any "abnormalities in her grooming or hygiene during appointments." (R. at 47-48.)

The ALJ's consideration of Plaintiff's activities, along with her review of other record evidence, including Plaintiff's treatment notes, provides substantial evidence to support the ALJ's conclusion that Plaintiff had no more than mild limitations in any area of mental functioning and the absence of any RFC limitations pertaining to Plaintiff's mental abilities. (R. at 48.)

In arguing otherwise, Plaintiff contends that the ALJ failed to consider the limited extent of her daily activities and whether those translate to an ability to perform work-related functions. (ECF No. 18, at 22-23.) Specifically, although Plaintiff raises this argument to challenge the lack of mental limitations in the RFC assessment, she appears to argue that the ALJ failed to consider how her physical impairments disrupted her ability to engage in activities of daily living. (ECF No. 18, at 22.) For example, Plaintiff contends that the ALJ did not consider her testimony that she must rest every two hours even with minimal activity, that pain interferes with her daily living, and that her pain medication causes fatigue. (ECF No. 18, at 22.) The ALJ's decision shows that she properly considered the extent to which Plaintiff could perform activities of daily living and explained how Plaintiff's impairments translated to symptoms and associated functional limitations included in the RFC determination.

In assessing a claimant's daily activities, the ALJ must consider both the types of activities that a claimant can perform and the extent to which a claimant can perform them. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). The ALJ, however, complied with this requirement. (R. at 48, 50.) For example, the ALJ acknowledged that Plaintiff could "make[] *simple* meals in the microwave" and "drive[] *three* times a week." (R. at 50 (emphasis added).) The ALJ also

acknowledged Plaintiff's testimony that she had "low energy," took medications that made her sleepy and dizzy, could not mop or vacuum, and required assistance with laundry and "routine daily tasks" during a sarcoidosis flare-up.  (R. at 50.)  The ALJ also expressly acknowledged that Plaintiff's physical impairments included "a condition that can wax and wane," but found that "the evidence, including her level and frequency of treatment and stable examinations, does not demonstrate that even when [Plaintiff] experiences an exacerbation of symptoms that she is more restricted than found in the above-defined [RFC]."  (R. at 53.)  The ALJ did not simply consider the types of activities that Plaintiff could perform, but also the extent to which she could perform them.  (R. at 48, 50); *see Dangelette D. v. Saul*, No. 3:19-cv-358, 2020 WL 5046293, at *4 (E.D. Va. Aug. 26, 2020).  Therefore, the Court finds no error in the ALJ's consideration of Plaintiff's daily activities as one factor supporting the conclusions that Plaintiff's mental impairments were non-severe and did not justify mental RFC limitations.

## B.  Any Error in Failing to Explain the Omission of a Kneeling Limitation in the RFC Assessment Is Harmless

Plaintiff next argues that the ALJ erred by failing to include any kneeling limitations in (or otherwise explain its omission from) the RFC determination even though the record includes three medical opinions supporting that limitation.  (ECF No. 18, at 25-27.)  The Commissioner counters that "[a]n ALJ has no obligation to adopt wholesale a functional assessment provided by any medical source," that substantial evidence supports the physical RFC assessment, and that any error in failing to adopt kneeling limitations is harmless.  (ECF No. 22, at 21-26.)  As explained below, the Court finds that the ALJ failed to provide a sufficient narrative as to why she omitted any kneeling limitation from the RFC even though she adopted other postural limitations.  However, because the ALJ's findings at step four, and, in the alternative, step five, involved

occupations that do not require kneeling, any error in failing to include a kneeling limitation (or explain the lack thereof) is harmless.

Three medical opinions considered by the ALJ included kneeling limitations in the RFC. Dr. Hutcheson opined that Plaintiff could occasionally kneel, and Dr. Spetlzer and NP Nyeche found that Plaintiff could never kneel. (R. at 53, 54, 99-100, 110, 516.) The ALJ did not determine the persuasiveness of Dr. Hutcheson's opinion, although she described it as "largely consistent with [the] evidence." (R. at 53.) The ALJ found Dr. Spetzler's opinion persuasive as it was consistent with the evidence and supported by his examination findings. (R. at 54.) Finally, the ALJ was not fully persuaded by NP Nyeche's opinion but largely focused on findings related to handling and feeling limitations to explain the weight assigned to her opinion. (R. at 54.) The ALJ otherwise found NP Nyeche's opinion "overall consistent with the evidence" and supported by the consultative exam findings. (R. at 54.) Despite these assessments of the medical opinions, the ALJ declined to adopt any kneeling limitations in the RFC and failed to explain the omission. This lack of explanation frustrates meaningful judicial review.

This is especially true considering the ALJ's other findings in the decision and adoption of other postural limitations. For example, the ALJ acknowledged Plaintiff's history of bilateral knee pain, knee tenderness at times, some decreased knee range of motion, right total knee replacement surgery, severe degenerative changes in the medial compartment of the left knee and moderate medial osteoarthritis, and mild effusion in the right knee. (R. at 51.) The ALJ also adopted other postural limitations consistent with the medical opinion evidence, including that Plaintiff never crawl. (R. at 49.) The ALJ explained that Plaintiff should never be required to crawl considering her pain and weight. (R. at 53.) Despite these findings, the ALJ failed to explain why a kneeling

limitation would not be appropriate and thus failed to build "an accurate and logical bridge from the evidence to [her] conclusion." *Monroe*, 826 F.3d at 189.

Regardless, any error in failing to include or explain the omission of a kneeling limitation is harmless because the occupations at issue in the ALJ's step four and step five findings do not require kneeling in any event. Specifically, at step four, the ALJ found that Plaintiff's RFC did not preclude her from performing her past relevant work as a senior treasury analyst, or accountant, budget as defined by the vocational expert under Dictionary of Occupational Titles ("DOT") code 160.162-022. (R. at 54, 87.) That job does *not* require any kneeling. Accountant, Budget, DICOT 160.162-022, 1991 WL 647250 ("Kneeling: Not Present - Activity or condition does not exist"). Similarly, the ALJ made an alternative step five finding that Plaintiff could perform the occupation of accounting clerk (R. at 55, 89), which also does *not* require any kneeling. Accounting Clerk, DICOT 216.482-010, 1991 WL 671933 ("Kneeling: Not Present - Activity or condition does not exist").

Even if the ALJ erred by not including a kneeling limitation in the RFC, such error would be harmless because Plaintiff could perform her past relevant work and the occupation of accounting clerk consistent with her RFC combined with a limitation precluding her from kneeling altogether. *See, e.g.*, *Elsie P. v. Comm'r of Soc. Sec.*, No. 2:21-cv-375, 2022 WL 4244600, at *7 n.5 (E.D. Va. Apr. 27, 2022) (concluding that "even if Plaintiff could not perform any challenged postural activities, it would be harmless error because she could still perform her past relevant work and would not be disabled"), *report and recommendation adopted*, 2022 WL 3586209 (E.D. Va. Aug. 22, 2022); *Arguello v. Saul*, No. 4:19-cv-42, 2020 WL 1301654, at *11 (E.D. Va. Mar. 2, 2020) (finding that although the ALJ erred by not limiting Plaintiff to an RFC with only frequent handling, such error was harmless because "even if [the] ALJ . . . had incorporated a frequent

handling limitation in his RFC finding, he still would have concluded at step 4 that [the claimant] could perform her past relevant work as a title clerk because the job required only 'frequent handling"), *report and recommendation adopted*, 2020 WL 1290596 (E.D. Va. Mar. 18, 2020); *Cameron v. Colvin*, No. 1:12-cv-1352, 2015 WL 631172, at *5 (M.D.N.C. Feb. 12, 2015) ("[E]ven if the ALJ erred by finding Plaintiff could occasionally crawl and kneel, the [c]ourt should take no action because such error had no impact on the outcome of the case"), *report and recommendation adopted*, 2015 WL 3580879 (M.D.N.C. June 5, 2015). The ALJ's conclusion at step four, or in the alternative, at step five, that Plaintiff was not disabled would still stand even in the presence of any kneeling limitation. Thus, the Court finds no reversible error.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED; Defendant's Motion for Summary Judgment (ECF No. 22) be GRANTED; and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge David J. Novak and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar**

you from attacking on appeal the findings and conclusions accepted and adopted by the

District Judge except upon grounds of plain error.

 

 

 

                                                 /s/

                                               Summer L. Speight
                                               United States Magistrate Judge

Richmond, Virginia
Date: July 31, 2025